**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 14 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

No. 97-2257

MARTIN H. ADAMS,

Defendant-Appellant.

**Appeal from United States District Court**
**for the District of New Mexico**
**(D.C. No. CR-96-473-JC)**

Kenneth E. Fladager II, Rio Rancho, New Mexico, for the appellant.

James Miles Hanisee, Special Assistant United States Attorney (John J. Kelly, United States Attorney, with him on the brief), Albuquerque, New Mexico, for the appellee.

Before **ANDERSON**, **McKAY**, and **BRISCOE**, Circuit Judges.

**BRISCOE**, Circuit Judge.

Martin Adams appeals his sentence for driving while under the influence and driving on a revoked or suspended license on a military installation. He contends he should have been sentenced under 32 C.F.R. § 210.3 rather than under state law

applicable through the Assimilative Crimes Act (ACA), 18 U.S.C. § 13.  We disagree and affirm.

Adams was issued a citation for driving on a revoked or suspended license and driving while under the influence on Kirtland Air Force Base in New Mexico.  Because the government invoked the ACA, Adams was charged under the New Mexico Traffic Code rather than under federal law.  He pleaded guilty to both offenses.  At sentencing, he argued he could not be given the state sentence under the ACA because the ACA can only apply when there is no federal law.  Adams asserted the applicability of 32 C.F.R. § 210.3(d), a Department of Defense regulation that applies state traffic laws to military installations but provides a maximum punishment of thirty days in jail and a $50 fine.  The district court disagreed and sentenced Adams to 300 days in jail followed by two years' probation, and fines of $1,050, a sentence permitted under state law.

The ACA provides:

> Whoever within . . . [a federal enclave] is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

18 U.S.C. § 13(a).  The purpose of the ACA is to borrow state law to fill gaps in the federal criminal law that applies on federal enclaves.  Lewis v. United States, 118 S. Ct. 1135, 1139 (1998).  The ACA provides "a method of punishing a crime committed on government reservations in the way and to the extent that it would have been punishable

if committed within the surrounding jurisdiction." United States v. Garcia, 893 F.2d 250, 253 (10th Cir. 1989) (quoting United States v. Sain, 795 F.2d 888, 890 (10th Cir. 1986)). The ACA applies when there is no enactment of Congress making defendant's act or omission punishable. Even when there is an enactment of Congress that applies to the act or omission, the federal statute will not necessarily preclude application of state law through the ACA. Whether application of state law is precluded depends on the language and purpose of the federal statute. See Lewis, 118 S. Ct. at 1141-42.

Adams contends the ACA is inapplicable because his offense is punishable under 32 C.F.R. § 210.3. He asserts the regulation is "unquestionably" an enactment of Congress. Although courts have stated regulations can be enactments of Congress within the meaning of the ACA, see, e.g., United States v. Fox, 60 F.3d 181, 185 (4th Cir. 1995); United States v. Hall, 979 F.2d 320, 322 (3d Cir. 1992), that conclusion is debatable, see Fox, 60 F.3d at 185-87 (Luttig, J., concurring). We need not decide this issue, however, because even if § 210.3 is an enactment of Congress within the meaning of the ACA, the regulation does not preclude application of state law.

32 C.F.R. § 210.1 provides:

> This part establishes policies pursuant to the requirements of DoD Directive 6055.4, "Department of Defense Traffic Safety Program," November 7, 1978, and to authority delegated to the Secretary of Defense under Enclosure 1 for the enforcement, on DoD military installations, of those state vehicular and pedestrian traffic laws *that cannot be assimilated under U.S.C., Title 18, section 13.*

(Emphasis added.) 32 C.F.R. § 210.2 provides:

(a) The provisions of this part apply to the Office of the Secretary of Defense, the Military Departments, the Organization of the Joint Chiefs of Staff, the Unified and Specified Commands, and the Defense Agencies.

(b) The provisions encompass all persons who operate or control a motor vehicle or otherwise use the streets of a military installation over which the United States exercises exclusive or concurrent legislative jurisdiction.

(c) The provisions govern only vehicular and traffic offenses or infractions *that cannot be assimilated under 18 U.S.C. 13*, thereby precluding application of state laws to traffic offenses committed on military installations.

(Emphasis added.)  32 C.F.R. § 210.3 provides:

(a) It is the policy of the Department of Defense that an effective, comprehensive traffic safety program be established and maintained at all military installations as prescribed in DoD Directive 6055.4.

(b) State vehicular and pedestrian traffic laws that are now or may hereafter be in effect shall be expressly adopted and made applicable on military installations *to the extent provided by this part*.  All persons on a military installation shall comply with the vehicular and pedestrian traffic laws of the state in which the installation is located.

(c) Pursuant to the authority established in the Enclosure 1 to DoD Directive 5525.4, installation commanders of all DoD installations in the United States and over which the United States has exclusive or concurrent legislative jurisdiction are delegated the authority to establish additional vehicular and pedestrian traffic rules and regulations for their installations. All persons on a military installation shall comply with locally established vehicular and pedestrian traffic rules and regulations.

(d) A person found guilty of violating, on a military installation, any state vehicular or pedestrian traffic law or local installation vehicular or pedestrian traffic rule or regulation *made applicable to the installation under the provisions of this part* is subject to a fine of not more than $50 or imprisonment for not more than 30 days, or both, for each violation (40 U.S.C. 318c).

(e) A copy of this part shall be posted in an appropriate place on the DoD installation concerned.

(Emphasis added.)  Until and unless the prerequisites of § 210.2(c) are satisfied, § 210.3

does not apply. Section 210.3 applies only to offenses that cannot be assimilated under the ACA. Where, as here, the offenses can be assimilated under the ACA, § 210.3 does not come into play.

One reason some state traffic offenses cannot be assimilated under the ACA is that it applies only to criminal offenses and some state traffic offenses are not criminal in nature. See, e.g., United States v. Devenport, 131 F.3d 604, 606-07 (7th Cir. 1997); United States v. Carlson, 900 F.2d 1346, 1347 (9th Cir. 1990); United States v. Rowe, 599 F.2d 1319, 1320 (4th Cir. 1979). We note a similar regulation, 32 C.F.R. § 634.25, expressly provides that in states where traffic law violations cannot be assimilated under the ACA because they are not criminal in nature, such laws are applied to military installations by regulation, which authorizes punishment of up to thirty days and a $50 fine. In Devenport, 131 F.3d at 609 n.3, the court held § 634.25(f) was not controlling federal law that rendered the ACA inapplicable since the regulation applies only in states where violations of traffic law cannot be assimilated under the ACA because they are not considered criminal in nature.

The New Mexico traffic offenses of which Adams was convicted are criminal in nature. See N.M. Stat. Ann. §§ 66-5-39 (driving while license suspended or revoked is a misdemeanor) and 66-8-102 (driving while under the influence is a misdemeanor and fourth conviction is a felony); N.M. Stat. Ann. § 66-7-3 (violations of traffic laws are

misdemeanors).[1] Nor has Adams offered any other reason why they cannot be assimilated under the ACA.

Although Adams cites United States v. Palmer, 956 F.2d 189 (9th Cir. 1992), as authority for requiring sentencing under 32 C.F.R. § 210.3, Palmer is not applicable to this case. Palmer was charged under the ACA and California law with driving while under the influence in a national park following three or more prior DUI convictions. California law provided an enhanced penalty for successive DUI violations. However, National Park Service regulations expressly incorporated all state traffic and vehicle laws "except those 'specifically addressed'" in the regulations. 956 F.2d at 190. The regulations specifically prohibited driving while under the influence and set a maximum penalty of six months in jail and a $500 fine, with no enhanced penalty for successive violations, resulting in a considerably lighter penalty than provided by state law. The court concluded since the regulations specifically addressed driving while under the

_____

[1] The ACA may require assimilation of DUI offenses regardless of any state decriminalization. Subsection (b) of the ACA, enacted in 1988, provides that "for purposes of subsection (a) of this section, that which may or shall be imposed through judicial or administrative action under the law of a State . . . for a conviction for operating a motor vehicle under the influence of a drug or alcohol, shall be considered to be a punishment provided by that law." 18 U.S.C. § 13(b)(1). See United States v. Clinkenbeard, 44 M.J. 577, 578 (A.F.C.C.A. 1996). However, subsection (b) has been read differently. In Devenport, the court held subsection (b) does not require assimilation of DUI convictions that are not criminal under state law because it applies only when there has been a conviction. Devenport held subsection (b) was intended only to expand the sentencing options for DUI convictions in federal court. 131 F.3d at 609-10. We need not decide this issue as Adams' offenses are criminal under state law.

influence, that offense was punishable directly by federal law. Consequently, the ACA and state law were inapplicable. Here, by contrast, the penalty provided in 32 C.F.R. § 210.3 is inapplicable unless the offense at issue cannot be assimilated under the ACA. 32 C.F.R. § 210.2(c).

We conclude there is no federal law making Adams' offenses punishable and, therefore, New Mexico law was applicable through the ACA. Adams' sentence is AFFIRMED.